## Southern Railway in Ky. v. Steele.

Appeal from Mercer Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for Plaintiff. Defendant appeals. Affirmed.

1. Appeal—Error Cured by Instruction—The admission of evidence in a personal injury case that plaintiff had a family dependent on him is cured by an instruction that the jury are not to consider such evidence.

2. Trial—Right to Close Argument—Defendant, in a personal injury case in which the petition alleges gross negligence, does not acquire the burden of proof, and the right to close the argument, by admitting ordinary negligence and damages in an insignificant sum.

3. On Rehearing—As Civ. Code Prac., sec. 526, providing that the burden of proof lies on the party who would be defeated if no evidence were given on either side, refers to the party who is defeated on what is in issue, and not to a party against whom judgment is rendered for what he has confessed, a defendant, sued for gross negligence, has not the burden of proof and the right to open and close by admitting ordinary negligence and damages in a nominal sum.

E. H. GAITHER and HUMPHREY, HINES & HUMPHREY for appellant.

Southern Railway in Ky. v. Steele.

1. Under the pleadings in this case the burden was clearly upon the appellant railway company, and it should have been allowed to make the concluding argument to the jury.

2. The Court erred in permitting, over appellant's objection, evidence as to the size and condition of appellee's family and his impecunious condition, and this error was not cured by the effort of the Court to withdraw this incompetent testimony from the jury at the conclusion of all the evidence.

3. The verdict of $5,000 for injuries not resulting in permanent disability is excessive and appears to have been given by the jury under the influence of passion and prejudice.

### AUTHORITIES CITED.

1. Burden of proof. (L. & N. R. R. v. Champion, 24 K. L. R., Part I, page 87; Ashland & Catlettsburg Street Railway Co. v. Hoffman, 26 K. L. R., 778; Mattingly v. Shortell, 27 K. L. R., 426; Walling v. Eggers, 25 K. L. R., Part II, page 1564; C., St. L. & N. O. R. R. Co. v. Rottgering, 26 K. L. R., 1172; Royal Insurance Company v. Schwing, 87 Ky., 416; Civil Code, sec. 526; L. & N. R. R. Co. v. Champion, 24 K. L. R., Part I, 87; Crabtree v. Atchison, 93 Ky., 341-2; Lucas v. Hunt, 91 Ky., 279.)

2. Incompetent testimony. (Southern Ry. Co. in Ky. v. Evans' Adm'r, 23 K. L. R., 569; L. & N. R. R. Co. v. Eakins' Adm'r, 103 Ky., 477.)

3. Excessive damages. (Jolly v. N. Y. & E. R. Ferry Co., 62 N. Y. supp., 576; Thomas v. Consolidated Traction Co., 62 N. J. L., 36 (42 Atl., 1062).

ROBERT HARDING for appellee; E. M. HARDIN and GREENE & VANWINKLE of counsel.

1. The Civil Code, in requiring separate defenses to be paragraphed, would, it seems to us, necessarily mean that the defense in each paragraph should be complete and perfect in itself, otherwise there would be no necessity for paragraphing.

2. This necessarily results from the rule that each paragraph must present a complete defense or cause of action, and the allegations or denials of one paragraph cannot be considered in determining the sufficiency of another paragraph.

3. We therefore insist that an issue as to negligence and also as to the injuries of appellee are made by the petition, and the first paragraph of the answer which we have quoted. This issue as to both negligence and injuries necessarily placed upon appellee the burden of proof.

4. Appellant urges as a second reason for reversal that the

lower court permitted appellee to prove over its objection the number of appellee's family and their dependence upon him for support. If this was an error the court subsequently corrected it before the case was submitted to the jury in the instruction given the jury expressly in regard to it.

5. Excessive Damages—There can be no reversal upon this ground, unless the sum is so excessive as to indicate at first blush that the jury were influenced by passion or prejudice in giving it.

AUTHORITIES CITED.

Spencer v. Babcock, 22nd Barb., 326; Ayres v. Covill, 18th Barb., 260; Lowe Case, 25th Ky. L. R., 2323; L. & N. R. R. Co. v. Mitchell, 87 Ky., 342; L. & N. R. R. Co. v. Davis, 24 Ky. L. R., 1416; Risk v. Ewing, 22 Ky. L. R., 1485.

OPINION OF THE COURT BY JUDGE CANTRILL.—Affirming.

In 1904 the appellant was engaged in building a side track on its line of road between Harrodsburg and Burgin. The work of the side track was being performed by a work crew and a work train. On the day of the collision the work train was under the directions of a conductor. The work crew were ordered to get on the work train, which was composed of an engine, tender, three flat cars, and a caboose. The work crew got upon the flat cars at the direction of the conductor, who also took a position on the forward flat car (the same car on which the appellee was), and took a position on the front end of said car at or near the brake rod. About the time that this work train left the yards in Harrodsburg to go down to work on the side track, a freight train left the yards at Burgin going in the direction of Harrodsburg. When said freight train was about one mile and a quarter from Harrodsburg, it collided with the work train, killing two or three men and injuring others—among the injured being appellee. At the time of the accident the work train seemed to be run by somebody who was not connected with the regular train crew. The engineer for said work train was not at his post in the engine, and none of the crew

seem to know where he was, except that they sup-
posed that he was in the caboose. Thus equipped, the
work train left the yards at Harrodsburg, going in
the direction of Burgin. According to the testimony
of those on the work train, the rate of speed of this
work train was said to be from 40 to 45 miles an hour.
There is no indication or testimony tending to show
that this speed was slackened at the time the col-
lision occurred. In the meantime the freight train
which started out from Burgin was approaching the
town of Harrodsburg. This train seemed to be un-
der the control of a conductor, and an engineer and
fireman. It appears from the proof that the engineer
on this freight train was twice warned of the prox-
imity of the work train—first, by a sectionman who
flagged the train with a danger signal and told him
that he would meet the work train down there in the
cut; and further along a section foreman flagged the
train, and it slowed up sufficiently for him to tell him
to be on the lookout for the work train down there
in the cut. It does not appear that the engineer of
the freight train stopped his train to ascertain where
the work train was, but proceeded on his way. Now,
between Burgin and Harrodsburg there was no side
track which the work train could pull out on and
let the freight train pass; and the only way for the
freight train to pass the work train was for the work
train to back back to Harrodsburg and let it be passed
there, or for the freight train to back back to Burgin
and give the work train an opportunity to pass at
that place. In any event, there was no effort made
to find out the position of the work train on the track,
nor was there any made on the part of the crew of
the work train to find out where the freight train was
as it approached. Thus were the two trains—one
approaching from the west at a rate of speed de-
scribed from 40 to 45 miles an hour, whilst the freight
train was coming from the east towards the west at

a rate that is not even approximated by any of the witnesses. These two trains were in these conditions when the collision occurred. It is perfectly apparent from the statement of this case that those in charge of said trains were guilty of criminal negligence, and from our standpoint it is the duty of the court when a case is presented which shows criminal negligence, to so designate it, and in this particular case the crews on both trains were guilty of criminal negligence. The crew on the work train especially so. The conductor was on the front of the front flat car, and it was apparent to him that the engineer was not at his post of duty, but that there were some volunteers—two negroes—in charge of the train, one acting as engineer and one acting as fireman. There is nothing in the record to show that either of them knew anything pertaining to the duties of either place—either that of engineer or fireman. It further appears that the negro who was acting as fireman loaded up the engine with coal, and it appears also that the engine was then put in motion and continued on its way down the track, in the direction from which the freight train was coming, at a rate of speed as designated by some witnesses at from 40 to 45 miles an hour. There is nothing in the record to show that this rate was ever checked or stopped until the collision occurred. It was in this collision that appellee was injured. He was placed upon a flat car and taken back to Harrodsburg. Whether this flat car was backed by an engine, or whether it just ran back of its own momentum, does not appear. When he arrived at Harrodsburg, he was still unconscious, and was taken to his home in that condition, and so remained the greater part of that day, which was the 4th of June. When his injuries were examined by the doctors who had been summoned to attend him, it was found that his collar bone was broken, his right hand was terribly mangled, the end of one of his

fingers being cut off so as to hang by a thread, there was a cut on the right side of his head, and he was suffering from the shock of the collision with the two engines, to an extent even the doctors could not tell. He was put upon the bed, his wounds dressed, and he was kept upon a hard bed for three weeks and three days before he was able to get up. He then brought this suit in the Mercer circuit court, alleging that he was injured from the gross negligence of those in the operation of said trains. Upon the trial of said cause, the jury so found, and fixed his damages in the sum of $5,000, upon which verdict a judgment was rendered, and from this judgment the appellant appeals.

The appellant in its answer denied that the appellee was injured from the gross negligence of those in the operation of said train, or either of them. They denied that his collar bone was broken, or he otherwise suffered mental and physical pain by reason of said accident. The appellant further pleaded in another paragraph in its answer that the appellee was injured by the ordinary negligence of the defendant company, but denied any gross negligence, and admitted that the appellee was injured to the extent of $100 and no more. Upon the trial of the cause the appellant moved the trial court that it had the burden, and that it be allowed to introduce its testimony and to conclude the argument of said cause. Its contention is that, by reason of the fact that appellant admitted ordinary negligence, this admission of itself changes the rule of practice, and gives him the burden so far as the introduction of testimony and the argument is concerned. This contention the trial court overruled, and gave the burden to the appellee, where it properly belongs, to which action of the trial court the appellant objected and excepted at the time. At the trial of this cause, the circuit court permitted the appellee to testify that his family con-

sisted of himself, wife, and two children, and that
they were dependent upon him for their daily sup-
port, which testimony was objected to and excepted
to by appellant at the time. This action of the court
is one of the main grounds upon which a reversal
of this case is sought. When the court came to give
the instructions to the jury, it by an instruction with-
drew all of this testimony given by appellee (plaintiff
below), and notified the jury that this was not to
be considered by them in making their verdict. The
other instruction given by the court is neither ob-
jected to, nor excepted to, as far as the record shows;
the grounds for reversal relied upon being that appel-
lant was refused the burden, and refused the right to
conclude the argument, and that the trial court per-
mitted the appellee to testify of whom his family was
composed and that they were dependent upon his daily
labor for their support.

If it be true that the appellant in this class of cases
can evade the common rule of practice by admitting
ordinary negligence and denying gross negligence,
but admitting that appellee was damaged in the in-
significant sum of $100, then it would seem that the
rules of the Code of Practice should be abrogated and
of no effect, and that the Legislature should be called
upon to make a new section of the Code defining
when and how the appellant railroad company could
by such a device change the universal and accepted
practice in all the courts. The issue in this case was
not whether the appellant was guilty of ordinary
negligence, and his admission of that fact cuts no
figure in the case. The issue was for the jury to try
as to whether appellant was guilty of gross negli-
gence, and it was to try this issue (which had been
denied) that the jury was impaneled and sworn; and
such having been done, and the jury, having had ap-
pellee before them and heard and saw the extent of
his injuries, had the right to determine to what ex-

tent the appellant had been guilty of gross negligence, and, if necessary, to award punitive damages befitting the case that they were then trying.  The authority relied upon by the appellant in this case, that the appellant was entitled to the burden of proof and to have the concluding argument, does not bear out their contention, and is not borne out by the text of the authority cited.  A cursory reading of the opinion in the case of Louisville & N. R. R. Co. v. Champion, 68 S. W. 143, 24 Ky. Law Rep. 87, decides one question, and but one question alone; and that was that the appellee Champion, who was the plaintiff below, was not entitled to have the court give an instruction to the jury awarding punitive damages; and for that reason the court below, having given an instruction authorizing the recovery of punitive damages, was clearly in error from a statement of the case, and that is the whole case. The court does not come within a mile of deciding that, where the appellant admits ordinary negligence, he is entitled to the burden of proof and is entitled to the closing argument.

For these reasons, the judgment of the court below is affirmed.

Response to petition for rehearing.

Hobson, C. J.

When the defendant's answer confessed that there was ordinary neglect on its part and that the plaintiff was damaged to the amount of $100, there was substantially an offer of the defendant to confess judgment for this sum.  If no proof had been offered by either party, judgment would have been given against the defendant for the sum confessed, and judgment would in effect have gone against the plaintiff as to all the other matters alleged in the petition.  The plaintiff would, in this event, have been defeated as to all matters in issue, as he had offered no proof to sustain his allegations and judgment would have been

entered against the defendant for the uncontroverted part of the claim. The case would not be different if the plaintiff had sued upon an account of ten items, and the defendant had answered confessing the justice of the first item, but denying the other nine items of the account. The burden of proof does not depend on what is confessed and as to which there is no issue. The language of the Code is: "The burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side." Civ. Code Prac. § 526. A party cannot be said to be defeated in an action when a judgment is rendered against him for that which he confessed. As to this no evidence is to be introduced. The language of the Code refers to the party who is defeated on what is in issue. It has reference to matters as to which evidence should be given.

There is nothing in the cases of L. & N. R. R. Co. v. Champion, 68 S. W. 143, 24 Ky. Law Rep. 87, Mattingly v. Shortell, 120 Ky., 52, 85 S. W. 215, 27 Ky. Law. Rep. 426, Ashland & Catlettsburg R. R. Co. v. Hoffman, 82 S. W. 566, 26 Ky. Law Rep. 778, Walling v. Eggers, 78 S. W. 428, 25 Ky. Law Rep. 1564, or C., St. L. & N. O. R. R. Co. v. Rottgering, 83 S. W. 584, 26 Ky. Law Rep. 1172, to sustain a contrary conclusion. The last case was a proceeding to condemn land, and rests upon the ground that the commissioners' report made out a prima facie case. The other cases all rest upon the ground that the defendant had pleaded in avoidance of the cause of action sued upon, and that the matters relied on in avoidance were controverted by the reply.

Petition overruled.